STATE EX REL. ROOT ET AL., RELATORS, *v.* McHATTON, RESPONDENT.

JURY — *District Courts — Terms — Constitutional law.* — Under section 26, article viii. of the Constitution, providing that all laws relating to courts shall be general and of uniform operation throughout the State, and the . . . . proceedings and practice of all courts of the same class or grade, so far as regulated by law, shall be uniform, there can be but one law for the impaneling of a jury in each District Court; and therefore, section 17, article viii. of the Constitution, providing that the District Court in each county which is a judicial district by itself shall "be always open for the transaction of business," and when two or more counties are united, the judges shall "fix the term of court," cannot be construed to suspend the operation of the Act of March 14, 1889, providing for the appointment of jury commissioners at each regular term in any county, in counties where the District Court is in continual session.

DISTRICT COURTS — *Terms — Power of judge.* — Under section 523 of the Code of Civil Procedure, providing that each of the District Courts shall have power to make rules and regulations governing their practice and procedure, in reference to all matters not provided for by law, a district judge has power to designate the times when the terms of his court shall begin.

SAME — *Terms of court.* — Under the Constitution and statutes of this State a District Court without terms is a legal impossibility.

*Toole & Wallace, McConnell & Clayberg, Nathaniel Myers,* and *Robert G. Ingersoll,* for Petitioners.

The court below disregarded the provisions of the Act of March 14, 1889, upon the theory that under the Constitution there are no terms of court in Silver Bow County, but that the court is in continuous session, and that it would be impossible to select a jury during one term for the next term. That therefore the only method of procuring a jury in Silver Bow County is in pursuance of section 15 of said act, by directing the clerk to issue a venire of names selected by the judge. The provision of the Constitution creating Silver Bow County into a single district does not prohibit the fixing of terms by the judge thereof. The construction of the court below that this law does not apply to Silver Bow County would render the law a local and special one, as it would not apply to the counties of Lewis and Clarke, Deer Lodge, and Missoula, but would apply to all the other counties in the State. A law to be general must apply to the entire class to which the subject-matter might be applicable. The Constitution prohibits the passage of local or special laws in summoning or impaneling grand or petit jurors. Therefore, if the Act of March 14, 1889, is a special law and void, it entirely falls, and there is no statutory provision extant for the drawing of a petit jury. Section 15 contains the word "term" as well as the first section of the act. It is only "during a term" that the judge is entitled to exercise the rights set forth in section 15, and then he can only prepare a list of persons to serve as trial jurors "for such term." If he could make such selection and there is no term, but a continuous session, he could never make but one selection, because the provision of the statute is mandatory that the persons so drawn and not excused by the court "shall constitute the panel of petit jurors for such term." The construction contended for by the court below would result in a panel of trial jurors whose terms of office would only expire with their death. If terms are necessary to apply section 1, they are equally necessary to apply section 15, and if terms exist, section 1 and all other provisions of the act are applicable and must be followed. Section 15 allows the judge to draw a jury, as in the present instance, "during a term" where "a lawful petit jury is not present." Section 15 makes section 255 of the Code of Civil Procedure as amended a part thereof. Examining section 255 as amended

by the Act of March 2, 1889, it appears that "at the commencement of any term" the jury selected by the jury commissioners must be present and the panel for the term is formed therefrom, and the panel for the trial of each case is obtained out of the names selected by the jury commissioners, if it is at all possible to do it; that is, the jury must be present at the commencement of the term.  That must be what is meant by a lawful jury.  Our own Supreme Court has settled the question that we are entitled to have a jury drawn as provided by this act.  (*Kennon* v. *Gilmer,* 4 Mont. 433; *Dupont* v. *McAdow,* 6 Mont. 226; *Daniel* v. *Bridges,* 73 Tex. 149.)  These decisions are in exact accordance with the decisions of the Supreme Court of the United States.  (*Clinton* v. *Englebrecht,* 13 Wall. 434.)  We have adopted the statutes of California relative to mandamus and prohibition, and having so adopted the statutes, we adopt the construction placed upon them by the courts of California.  (*First Nat. Bank* v. *Bell etc. M. Co.* 8 Mont. 45.)  The Supreme Court of California had passed upon these questions prior to the adoption of such statutes by the Territory of Montana.  Under the provisions of the statutes we were entitled to the writ of mandamus to compel the appointment of jury commissioners, and to a writ of prohibition to prevent the exercise of unauthorized power, to wit, an exercise of jurisdiction in the court below.  There is no plain, speedy, and adequate remedy at law.  (*People* v. *Josephs,* 7 Cal. 130; *Fremont* v. *Crippen,* 10 Cal. 211; 70 Am. Dec. 711; *Babcock* v. *Goodrich,* 47 Cal. 508; *Wing Chung* v. *Mayor etc.* 47 Cal. 531; *North Bloomfield G. M. Co.* v. *Keyser,* 58 Cal. 324; *Thompson* v. *Spraig,* 66 Cal. 350; *Yearian* v. *Spears,* 4 Utah, 385; *Havemeyer* v. *Superior Ct.* 84 Cal. 401; *Porter Tp.* v. *Jersey Shore,* 82 Pa. St. 275; High on Extraordinary Remedies, § 17; *Quimbo Appo* v. *People,* 20 N. Y. 531.

No brief on file for Respondent.

BLAKE, C. J. — This is an application to this court upon the part of Henry A. Root and Maria Cummings for a peremptory writ of mandate to compel the judge of the District Court of the Second Judicial District of the State, in and for the county

of Silver Bow, to appoint three persons to serve as a commission in selecting a petit jury. The same parties have also filed an application for a peremptory writ of prohibition to command the said judge to desist and refrain from any further proceedings in the matter of the probate of a certain instrument, purporting to be the last will and testament of Andrew J. Davis, deceased, until otherwise ordered by this court. The affidavits of the relators embrace in substance the same allegations, and the returns of the respondent are similar, so that a determination of the issues in one proceeding necessarily controls both judgments. The relators have submitted two motions to strike from the returns certain portions thereof, which will not be considered by themselves, because they must stand or fall with the main propositions to be examined. There is no controversy respecting the facts, and the sole question before us must be solved by the construction of the Constitution and statutes relating to the impaneling of a jury in the District Courts, which exercise jurisdiction in a single county.

It will not be profitable to set forth fully the statements of the affidavits and returns, but the material facts appearing therein should be presented. Andrew J. Davis died March 11, 1890, in Butte, county of Silver Bow, aforesaid, and left an estate exceeding in value the sum of eight million dollars. Said Root and Cummings and others are heirs at law of the deceased. John A. Davis, a brother of the deceased, produced to said District Court, July 24, 1890, a paper purporting to be the will of the deceased, and to have been executed in the State of Iowa, July 22, 1866, and by which the said estate, with the exception of some small annuities, was bequeathed to the said Davis. Said Root and Cummings within the proper time appeared and contested the will in the manner required by law. The issues of fact which were thereby raised were settled October 23, 1890, and the court set, December 20, 1890, the same for hearing February 2, 1891. The contestants filed, January 29, 1891, in the court their demand in writing to have these issues tried by jury. The panel of trial jurors was obtained and drawn in pursuance of a certain order of the court, made December 20, 1890, which is as follows: —

"In the matter of the trial jury. This day, it appearing to

the court that the regular panel of trial jurors herein were, on December 17, 1890, discharged from further attendance upon court; and that there is at this time no trial jury in attendance upon the court; and that a jury is necessary, there being several causes pending and set for trial,—it is ordered that the clerk of this court, or his deputy, under the direction of the judge thereof, prepare a list of names of forty persons, competent to serve as trial jurors, and include the names of the persons so selected in a venire, directed to the sheriff of the county of Silver Bow, commanding him to summon the persons whose names appear in said venire, to be and appear before this court on Monday, January 19, 1891, at ten o'clock, A. M.

"JOHN J. McHATTON, Judge."

The population of said county of Silver Bow exceeds ten thousand. The contestants demanded, January 31, 1891, of the court the appointment of jury commissioners, and that a jury should be drawn in accordance with the provisions of the act relating to the drawing of jurors, approved March 14, 1889. They also move to quash and set aside the venire, and discharge the said panel of petit jurors, but the court refused to appoint said commissioners and overruled the motion.

The District Court for the county of Silver Bow, under the territorial government, adjourned *sine die* November 12, 1889, and no order for the appointment of a jury commission was made during the term, which then expired. Since the organization of the District Court within the State, no petit jury has been impaneled through the action of any jury commission.

The respondent says in his returns that "the District Court of the State for the Second Judicial District has no terms or regular stated provisions of time for its sitting, but is always open, and there are continual sessions as in the Constitution provided, and there has been no time at which jury commissioners could be appointed by this defendant; and the first section of said Act of March 14, 1889, has by the provisions of the Constitution been superseded and annulled, so far as applicable to said District Court." The respondent also alleges that he has followed the requirements of the fifteenth section of said act, which is in these words: "If during a term of the District Court a lawful petit jury is not present, and one is wanted, it

shall be lawful for the judge of the court, and the clerk of such court, or his deputy, under the direction of the judge, to prepare a list of the names of at least twenty-four competent persons to serve as trial jurors for such term. After such list is so prepared, it shall be the duty of the clerk of the court, or his deputy, to issue a venire containing the names of the persons selected as aforesaid, and to place the same in the hands of the sheriff, who shall thereupon summons such persons to appear before such court upon the day named in such venire and fixed by the judge of such court. The persons so drawn and summoned, and not excused by the court, shall constitute the panel of petit jurors for such term. If during the progress of any trial of any cause in such court, where a jury has been drawn, as in this section provided, it shall become necessary for any cause to summon additional jurors, such additional jurors shall be drawn and summoned by an open venire, in accordance with the provisions of section 255 of the first division of the Compiled Laws of Montana, and the acts amendatory thereto." (Stats. 16th Sess. 168.) ·

The first section of the act which is mentioned in the return is as follows: "It shall be the duty of the judge of the District Court, at each regular term that shall be holden in any county, to appoint three persons of honor and respectability, not parties litigant to any matter pending in such court, and who shall have resided in such county at least two years next preceding, and shall also possess the qualification required by law for jurors, to constitute jointly, along with the judge of probate of said county and the county clerk, a commission to select a grand and petit jury, whose duty it shall be to serve at the next regular term of said court in each county." (Stats. 16th Sess. 166.) The manner in which this commission shall discharge its duty is carefully defined, and the fifth section of the act should be noticed in this inquiry. "The jury commissioners for such county shall then proceed to draw a petit jury for the next ensuing term of court in manner following: In any county where the population exceeds ten thousand, such commissioners shall select the names of three hundred persons lawfully qualified to serve as jurors from the county assessor's books of the county, . . . . and the names of the persons so selected, after

being written on separate slips of paper, shall be deposited in a box to be provided for such purpose, and well shaken up, and from the names so deposited the jury commissioners shall alternately draw the names of thirty persons, who shall be summoned as trial jurors for the next ensuing term of such District Court. (Stats. 16th Sess. 166.) The particular steps which must be taken after these services have been performed are pointed out in other paragraphs of the law, which do not affect the discussion.

It must be admitted that the statute regarding the appointment of a jury commission was enforced throughout the Territory, and that there is no difficulty in carrying into effect its provisions in the judicial district of the State which comprise more than one county. But the respondent maintains that there exists in his district an insurmountable obstacle to its execution, which has been erected by this section of the Constitution: "The District Court in each county which is a judicial district by itself shall always be open for the transaction of business except on legal holidays and non-judicial days. In each district where two or more counties are united, until otherwise provided by law, the judges of such district shall fix the term of court, provided that there shall be at least four terms a year held in each county." (Const. art. viii. § 17.) It is claimed by the respondent that the regular terms or stated times of holding the District Court in the county of Silver Bow have been thereby abolished, and that the act concerning the jury commissioners has lost its vitality, or been rendered impracticable.

What, then, is a "term of court?" The importance of a precise definition of this legal phrase is obvious when the language of the returns is remembered, and also the Constitution and laws, *supra*. It is often employed in the Compiled Statutes, and a reference thereto may afford some light upon our path. The Code of Civil Procedure provides for the relief in certain cases of a party who "has been unable to apply . . . . during the term at which such judgment, order, or proceeding complained of was taken," and whose application has been "made within a reasonable time, not exceeding five months after the adjournment of the term." (Code Civ. Proc. § 116.) "The clerk shall enter causes upon the calendar of the court according to the date of the issue. Causes once placed upon the calendar,

for a general or special term, if not tried or heard at such term, shall remain upon the calendar from court to court until finally disposed of." (Code Civ. Proc. § 251.) "A final adjournment of the court for the term shall discharge the jury." (Code Civ. Proc. § 269.) "When on the day appointed for the commencement of any term of the . .. . District Court, the . . . . judge of such court being not present to hold the same, the clerk of the court shall adjourn such term of court, from day to day, until the expiration of one week from the day appointed for the commencement of the term, . . . . and if the . . . . judge of such court be not then present to hold such term on the day one week from the time appointed for such term to commence, the clerk shall adjourn the court for the term." (Code Civ. Proc. § 531.) "That there shall be regular terms of the Probate Court held in the several counties of the Territory, on the first Mondays of January, March, July, September, and November of each year, for the transaction of probate business. The Probate Courts shall be always open for the transaction of all other business within their jurisdiction." (Code Civ. Proc. § 709.)

The Criminal Practice Act requires a magistrate in some cases to commit a defendant to jail, "to be held to appear at the following term of the District Court." (Crim. Prac. Act, § 96.) He shall take a recognizance from each material witness, "conditioned to pay the sum of five hundred dollars should he fail to appear and testify, as required, at the term of court at which the defendant is required to appear." (Crim. Prac. Act, § 99.) Provision is made for witnesses who may be taken into custody, "awaiting a term of court." (Crim. Prac. Act, § 102.) "All examinations and recognizances taken by any magistrate as provided herein shall be certified and returned by him to the clerk of the court . . . . on or before the first day of the next term thereof." (Crim. Prac. Act, § 105.)

If the position of the respondent is correct, and there can be no terms of the District Court in the judicial districts which include respectively one county, a remarkable conclusion must be declared. Juries would be impaneled in one forum by a mode which would be different from that pursued in other courts of equal jurisdiction, and the wholesome part of the act

authorizing the jury commission would be obeyed in twelve counties and ignored in the remainder of the State. We will not express any opinion as to the force of this interpretation upon the above citations from the Code of Civil Procedure and Criminal Practice Act.

In *Horton* v. *Miller*, 38 Pa. St. 270, Mr. Justice Thompson in the opinion says: "Terms of court 'are those times or seasons of the year which are set apart for the dispatch of business in the Superior Courts of common law.' (Tidd's Prac. 105.) Sir Henry Spelman traces their origin to the canonical constitutions of the church, which the four ordinary feasts of Hilary, Easter, Trinity, and Michaelmas, being the names of the four terms of the courts of common law in England, very clearly indicate to be their true origin. . . . . But still terms definite and fixed are prescribed, and are absolutely necessary to the successful administration of the judicial duty, so far as the public is concerned; and hence they are with us fixed by positive law." In *Bronson* v. *Schulten*, 104 U. S. 410, Mr. Justice Miller for the court says: "In this country all courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for the term. This is the case with regard to all the courts of the United States, and if there be exceptions in the State courts, they are unimportant."

There is no act which prescribes the time when the terms of the District Court shall begin or end, and by virtue of the acts of Congress, the judges of the Supreme Court of the Territory of Montana were clothed with this power. (U. S. Rev. Stats. § 1914.) The Constitution has expressly empowered the judges of certain districts to fix the terms of the courts, subject to a limitation as to the number which must be held in every year, and also "until otherwise provided by law." A mandatory rule of interpretation is laid down in this explicit section: "All laws relating to courts shall be general and of uniform operation throughout the State; and the organization, jurisdiction, powers, proceedings, and practice of all courts of the same class or grade, so far as regulated by law, shall be uniform." (Const. art. viii. § 26.) Therefore there must be one statute for

the impaneling of a petit jury by each District Court of the State, and the rights of parties which are dependent upon the commencement, duration, or adjournment of its terms, and which have been secured in the above excerpts from the Code of Civil Procedure and Criminal Practice Act, must be the same in every county. The seven hundred and ninth section of the Code of Civil Procedure, *supra*, contains expressions which are similar to those of the Constitution, *supra*, and is a valuable aid in ascertaining its meaning. It provided for definite terms of the Probate Courts, and further, that they "shall always be open for the transaction of all business within their jurisdiction." There is no inconsistent matter or repugnancy in these clauses. Another resemblance to the conditions which confront us should be commented on. A Probate Court was formerly organized in every county of the Territory, and the judge thereof was obliged to "keep his office at the county seat," and "keeps the same open during the business hours of each day (Sundays excepted)." (Comp. Stats. fifth div. § 911.) The judge of a District Court which has jurisdiction over two or more counties, from the necessity of the situation, must notify litigants and all whom it may concern of the times when he will be present to transact the public business. During most of the year he would probably be absent from the counties in which he does not reside, and for this reason, the framers of the Constitution have declared that this judge "shall fix the term of court." While no direction thereon is expressed for the officer who occupies the public trust of the respondent, his discretion is not restrained by prohibitory words. The respondent appears to have assumed that the construction was within the principle of the maxim, *Expressio unius est exclusio alterius*. The fifteenth section of the act, *supra*, on which the respondent places his reliance and fortifies his defense, mentions a "term of the District Court," and says that certain persons "shall constitute the panel of petit jurors for such term." We say unhesitatingly that a District Court without terms is a legal impossibility, and the Constitution and statutes, *supra*, recognize and sanction the proposition. We think that ample authority is conferred upon the respondent to designate the terms of his court by the Code of Civil Procedure, which says: " The

Supreme Court and each of the District Courts shall respectively have power to make rules and regulations for governing their practice and procedure, in reference to all matters not provided for by law." (Code Civ. Proc. § 523.) This authority when put in motion under the circumstances disclosed in these proceedings has the strength of a statute.

The Constitution has by general and special expressions continued in perfect vigor every provision of the law creating a jury commission. "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted into the Union, and not inconsistent with this Constitution, or the Constitution or laws of the United States of America, shall be and remain in full force as the laws of the State until altered or repealed, or until they expire by their own limitation. . . . . *and provided further*, that the duties which now by law devolve upon probate judges as jury commissioners . . . . shall, until otherwise provided by law, devolve upon and be performed by the clerks of District Courts in their respective counties." (Sec. xx. Schedule, § 1.) The distinct office of the probate judge was abolished when the government of the State was inspired with political life, and the Constitution has wisely ordained that the integrity of the jury commission shall be preserved by designating the person to fill the vacancy which had been caused by the change.

We have examined the rules of practice which have been adopted by the respondent, and find that he has not fixed the terms of his court according to the views which have been upheld by us. This is an omission which should be promptly remedied. The relators have saved their exception to the action of the respondent with reference to the impaneling of the jury in his court. Under the statutes governing the issuance of the writs of mandamus and prohibition, and the authorities, we think that the relators are entitled to the relief which they have sought in this court.

We cannot conclude these observations without commending the conduct of the respondent, who seems to have been led into error by a misapprehension of the language of the seventeenth section, *supra*, of the Constitution, and who has in a spirit of

candor requested us to remove the cloud of doubt which has obscured the subjects that have been considered.

Wherefore it is ordered and adjudged that a peremptory writ of mandate and a peremptory writ of prohibition be issued in the form prescribed by law, according to the prayer of the affidavits respectively of the relators.

HARWOOD, J., and DE WITT, J., concur.