## *In re* COUNTY COM'RS OF COUNTIES COMPRISING SEVENTH JUDICIAL DIST.

Opinion Filed November 11, 1908.

(98 Pac. 557.)

1.  **STATUTES—Expression of Subject in Title—Constitutional Requirements—Construction.** Section 57, art. 5 (Bunn's Ed. p. 130), of the Constitution of this state, ordaining that "every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title," is mandatory; but its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation.

2.  **SAME—Act Relating to Appointment of District Judges.** The title of the act entitled "An act to provide for the appointment of additional judges of the district courts of the state where same are found necessary; making an appropriation and declaring an emergency," embraces but one subject, namely, "the appointment of additional judges of the district courts of the state where same are found necessary," the subsequent clause being referable, and so correlated, to the subject expressed in the first clause in the title as a natural and legitimate complement to the subject therein expressed.

3.  **CONSTITUTIONAL LAW—Distribution of Governmental Powers—Judicial Powers—"Delegation of Legislative Power."** That portion of section 1 of said act (Act May 29, 1908, [Sess. Laws 1907-08, p. 453, c. 46]) which provides that upon the recommendation of the Supreme Court "the Governor shall appoint an additional judge for such district for the time recommended by the court," at least as to the fixing of the time or term of office of such additional judge, delegates to or lodges such legislative power with the Supreme Court as conflicts with section 1, art. 4, (Bunn's Ed. sec. 50), of the Constitution.

4.  **JUDGES — Additional Judges — Statutory Provisions—Validity.** That portion of section 2 of said act (Act May 29, 1908, Sess. Laws 1907-08, p. 454, c. 46), which provides that no appointment thereunder by the Governor of such additional judge "shall extend beyond January 1st, 1911," is in conflict with that portion of section 9, art. 7 (Bunn's Ed. sec 178), of the Constitution which provides that "the term of office of the district judges shall be four years.  *  *  *  The term of the district judges elected at the first election shall expire on the last day next preceding the second Monday in January, 1911, and the judges of the district

*In re* County Com'rs of Counties Comprising 7th Judicial District.

court thereafter shall be elected at the general election next preceding the commencement of their terms of office."

5.   **CONSTITUTIONAL LAW—Distribution of Governmental Powers —Judicial Powers—Encroachment on Legislature.** This court has no authority to exercise legislative power that is neither a means appropriate nor necessary to the judicial or supervisory powers granted to it by the Constitution.

6.   **STATUTES—Effect of Invalidity in Part.** Where a part of a statute is unconstitutional, that fact alone is not sufficient to auhorize the courts to declare the remainder void, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that the Legislature would have passed the one without the other.

(Syllabus by the Court.)

Petition to the Supreme Court by the county commissioners of a majority of the counties comprising the Seventh judicial district that it recommend to the Governor the appointment of an additional judge, pursuant to Act May 29, 1908 (Sess. Laws 1907-08, p. 453, c. 46). Petition dismissed.

*C. A. Galbraith, W. T. Hutchings, Thos. H. Owen,* and *Clarence L. Thomas,* for relators.

WILLIAMS, C. J. Upon petition to this court of a majority of the county commissioners of the counties embraced in the Seventh district court judicial district of this state, it is contended in this court that such an unusual number of cases are awaiting trial in said court that a thorough, prompt, and effective administration of justice cannot be secured in said district, and we are asked to recommend to the Governor the appointment of an additional judge for said district for such period as the court may consider necessary to meet the condition therein.

In the event that we find that an unusual number of cases await trial by said court, and that a thorough, prompt, and effective administration of justice cannot be secured therein, it would become our duty to recommend for such period as we may think necessary to meet the condition to the Governor the appointment of an additional judge in said district. In such event it would be

mandatory upon the Governor to appoint such additional judge for said district for the time recommended by the court unless the act entitled "An act to provide for the appointment of additional judges of the district courts of the state where same are found necessary; making an appropriation and declaring an emergency," approved May 29, 1908 (Sess. Laws 1907-08, pp. 453, 454, c. 46), is invalid.

It is necessary to examine the following questions involved in said act:

(1) Whether or not the act contains two separate and distinct subjects, in that it provides for the appointment of additional judges of the district courts of the state where same are found necessary, and also makes an appropriation.

(2) Whether or not section 1 thereof, in providing that, when it is made to appear to the Supreme Court that any district court has such an unusual number of cases awaiting trial therein that a thorough, prompt, and effective administration of justice cannot be secured it shall recommend to the Governor the appointment of an additional judge attempts to delegate legislative power to the judicial branch of the government.

(3) Whether or not the provision of section 1 of said act, that upon the recommendation of the Supreme Court the Governor shall appoint such additional judge for such district for the time recommended by the court, delegates to or lodges legislative power with the judiciary.

(4) Whether or not that portion of section 2 of said act, which provides that no appointment thereunder by the Governor of such additional judge "shall extend beyond January 1st, 1911," is in conflict with that portion of section 9, art. 7 (Bunn's Ed. § 178), of the Constitution, which provides that "the term of office of the district judge shall be four years.  *  *  * The term of the district judges elected at the first election shall expire on the last day next preceding the second Monday in January, 1911, and the judges of the district court thereafter shall be elected at

the general election next preceding the commencement of their terms of office."

1. The title of of the act embraces but one subject, namely, the appointment of additional judges of the district courts of the state where same are found necessary. Section 57, art. 5 (Bunn's Ed. § 130), of the Constitution of this state, ordains that "every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. * * *" The abuses which called such provision into existence are clearly understood, and are twofold. Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws, when neither measure could command or merit the approval of a majority of that body.

The other abuse against which this provision was levied was to prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously. Substantially such a provision is found in many of the state Constitutions, and, as is usual in such cases, judges have differed in their interpretation of the same. The best-considered cases, however, appear to have established the following propositions: That the clause is mandatory; that its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation; that the title of a bill may be very general, and need not contain an abstract of the contents of the bill, or specify every clause therein, it being sufficient if they are all referable and cognate to the subject expressed. Everything which is necessary to make a complete enactment, or to result as a complement of the thought therein contained is included in and authorized by such title expressed in general terms. *Weaver et al. v. Lapsley,* 43 Ala. 224; *Walker v. State,* 49 Ala. 329; *Lockhart v. City of Troy,* 48 Ala. 579; *Ballentyne v. Wickersham,* 75 Ala. 535; *State v. Rogers,* 107 Ala. 444, 19

South, 909, 32 L. R. A. 520; *Lindsay v. United States Savings & Loan Association et al.,* 120 Ala. 172, 24 South. 171, 42 L. R. A. 783; *Woodson v. Murdock,* 22 Wall. 351. 22 L. Ed. 716; *State ex rel. v. Squires,* 26 Iowa, 340; *Cannon v. Mathes,* 8 Heisk. (Tenn.) 504; *State v. Miller,* 45 Mo. 495; *Chiles v. Drake,* 2 Metc. (Ky.) 146, 74 Am. Dec. 406; *Keller v. State,* 11 Md. 525, 69 Am. Dec. 226; *Simpson v. Bailey,* 3 Or. 515; *Lafon v. Dufrocq et al.,* 9 La. Ann. 350.

In order to determine whether or not two subjects are embraced in this title, it is necessary to ascertain whether the clause "making an appropriation and declaring an emergency" is comprehended by the first clause. It provides for the appointment of additional judges of the district courts of the state where same are found necessary. Could, under such title, an appropriation be made to pay the necessary and actual expenses of such judge incident to the performance of his duties outside of the district for which he was originally appointed? We think so. *State ex rel. Bragg v. Rogers et al.,* 107 Ala. 449, 19 South. 909, 32 L. R. A. 520; *Ballentyne v. Wickersham,* 75 Ala. 538; *Woodson v. Murdock,* 22 Wall. 373, 22 L. Ed. 716; *In re Division of Howard Co.,* 15 Kan. 194; *Wenzler v. People,* 58 N. Y. 516; *Shields v. Bennett,* 8 W. Va. 74; *McGunnigle v. McKee,* 77 Pa. 81, 18 Am. Rep. 428; *Single v. Supervisors,* 38 Wis. 363; *Dorsey's Appeal,* 72 Pa. 192; *Newark v. Mt. Pleasant Cemetery Co.,* 58 N. J. Law, 171, 33 Atl. 396; *City of Pond Creek v. C. N. Haskell et al.,* 97 Pac. (Okla.) 338. In the case of *Ballentyne v. Wickersham,* 75 Ala. 539, Mr. Chief Justice Stone says:

"We may add that, if the questioned clause or clauses be not so correlated to the subject expressed in the title as to appear to follow as a natural and legitimate complement, then they cannot stand under the clause of the Constitution under discussion."

The language of the clause in our Constitution is substantially the same as that in the Alabama Constitution, and we approve the rule laid down by Mr. Chief Justice Stone.

2. It is insisted by counsel that section 1 of said act, in

providing that when it is made to appear to the Supreme Court, on petition and showing, that any district court has such an unusual number of cases awaiting trial therein that a thorough, prompt, and effective administration of justice cannot be secured, it shall recommend to the Governor the appointment of an additional judge, does not attempt to delegate legislative power to the judiciary, but merely imposes the power on it to determine some fact or state of things upon which the law makes, or tends to make, its own action depend, citing the cases of *Board of Commissioners of Pueblo County v. Smith,* 22 Colo. 534, 45 Pac. 357, 33 L. R. A. 465; *Haney v. Board of Commissioners of Barto County,* 91 Ga. 770, 18 S. E. 28; *State ex rel. Atwood v. Hunter,* 38 Kan. 578, 17 Pac. 177; *Boyd v. Bryant,* 35 Ark. 70, 37 Am. Rep. 6; *Locke's Appeal,* 72 Pa. 491, 13 Am. Rep. 716; *Commonwealth v. Sisson,* 189 Mass. 247, 75 N. E. 619, 1 L. R. A. (N. S.) 752, 109 Am. St. Rep. 630. In view, however, of the conclusions hereinafter reached affecting this act, it is not necessary to determine this question.

3. Next, does the provision of section 1 of said act, providing that upon the recommendation of the Supreme Court the Governor shall appoint such additional judge for such district for the time recommended by the court, delegate to or lodge legislative power with the judiciary?

In the case of *Commonwealth v. Addams,* 95 Ky. 591, 26 S. W. 582, Mr. Chief Justice Pryor, in delivering the opinion of the court, said:

"The Legislature, by its present enactment, has conferred the power on this court to fix the salaries of the clerk's deputies, when it is plainly required that a law should be enacted fixing the sum to which they are entitled. The attempt to confer such a power takes from the legislative department of the state the responsibility of fixing compensation for a certain class of officials, and places it upon the judiciary. The Constitution, requiring the compensation to be provided for by law, means that the Legislature, to which belongs the sole power of making laws, shall regulate this compensation, and that branch of the government has

no power to delegate this right to another branch by making the judiciary the agent for fixing the salaries or compensation for state officials. A law is not a complete law when it is nothing more than a delegated power attempted to be given by the Legislature to some other department of the government to make the law. The law is not enacted and this court asked to approve it, but we are required to fix the compensation. The sole power to make laws is confided to the Legislature, and in this case that body has surrendered its own judgment to that of this court, in fixing these salaries, saying in effect that with the exercise of your judgment we will be satisfied. This cannot be done, and this court, recognizing the wisdom of requiring each department of the government to act within its own sphere, would, necessarily, refuse to comply with the legislative will if the act applied to the present clerk of the court. It could not be carried into effect if it did apply, as there is no salary fixed by law for his deputies or assistants."

In the case of *Smith v. Strother*, 68 Cal. 194, 8 Pac. 853, the portion of the act of the Legislature therein brought into question provided as follows:

"The official reporter shall receive as compensation for his services a monthly salary to be fixed by the judge by an order duly entered on the minutes of the court, which salary shall be paid out of the treasury of the county in the same manner and at the same time as the salary of county officers."

Mr. Justice Thornton, in delivering the opinion of the court, said:

"It is argued that this act provides a mode of fixing a salary of an officer which is violative of the Constitution, in this: that the fixing of the salary in the mode provided would be the exercise of a legislative power. Now, what is the judge empowered by the words above quoted to do? As we understand it, it is to fix a salary, in advance of service by the officer, not exceeding a certain sum per month, to be paid monthly; the salary so fixed to continue until the court shall make an order changing it, and be paid every month during its continuance, though in consequence of a vacation of the court no service is rendered. The power is not to determine the value of services already rendered during a month, and to fix the amount of every monthly payment as compensation for services rendered with reference to the value so determined, not exceeding the limits prescribed by the act.

"It is prescribed by the first section of article 3 of the Constitution of this state that 'the powers of the government of the state of California shall be divided into three separate departments, the legislative, executive and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted.' Is the performance of the act devolved by the section of the statute above quoted on the judge of the superior court, by such judge, a legislative or judicial act? Such is the point presented for our determination.

"What constitutes the distinction between a legislative and judicial act? The former establishes a rule regulating and governing in matters or transactions occurring after its passage. The other determines rights or obligations of any kind, whether in regard to persons or property, concerning matters or transactions which already exist and have transpired ere the judicial power is invoked to pass on them. As said by Woodbury, J., in *Merrill v. Sherburne,* 1 N. H. 204, 8 Am. Dec. 52: 'The former [judicial tribunals] decides upon the legality of claims and conduct, and the latter [legislative tribunals] makes rules upon which, in connection with the Constitution, those decisions should be founded. It is the province of the judges to determine what is the law upon existing cases. In fine, the law is applied by the one and made by the other.'

"The Legislature makes a general rule for the regulation of conduct and the admeasurement of right; the judiciary makes a special rule regarding a state of facts which have occurred after the enactment of the general rule by the former, by applying such general rule to the state of facts. The former defines rights and wrongs by a rule laid down in advance; the latter enforces rights and redresses wrongs in cases arising on past occurrences. We have found no more accurate statement of the difference between a legislative and a judicial act than that expressed by Justice Field in his opinion in the Sinking Fund Cases. 'The distinction,' says the learned justice, 'between a judicial and a legislative act is well defined. The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other provides what the law shall be in future cases arising under it. Wherever an act undertakes to determine a question of right or obligation, or of property, as

the foundation on which it proceeds, such act is, to that extent, a judicial one, and not the proper exercise of legislative functions.'

*   *   *

"Tested by the foregoing, we are of opinion that the fixing of the salary of a reporter by the judge, in advance of services rendered, to be paid to him monthly, such salary to continue until changed by order of the judge, and to be paid where, as in the recesses of the court, no services are rendered, would be an exercise of legislative power. In doing this the judge would be determining no right or obligation pertaining to person or property on facts already existing, but would be laying down a rule to be applied to a case, the facts of which must afterwards transpire. As this would be an exercise of a legislative power not expressly directed or permitted by the Constitution to a court or judicial officer, the act must be declared unconstitutional."

In the case of *Jones Bros. v. Southern Ry. Co.,* 76 S. C. 67, 56 S. E. 667, Mr. Justice Gary, in delivering the opinion of the court said:

"Section 2094 of the Civil Code of 1902 delegates to the Railroad Commission power to prescribe rates for storage, and to fix at what time after the reception of freight, at place of destination, the charges for storage shall begin. But it does not purport to deal with the question as to when the liability of a railroad as a common carrier ceases and that of a warehouseman begins. It by no means necessarily follows that a railroad is exempt from liability as a common carrier simply because it has a right to exact storage charges. It would be competent for the Legislature to confer upon a railroad the right to charge storage from the time the goods were unloaded, although liable as a common carrier for a reasonable time after the arrival of the goods. Furthermore, changing the rule as to the time when the liability of a common carrier ceases, and that of a warehouseman begins, is not an act of executive administration, but involves a legislative question. Therefore it could not be delegated to the Railroad Commission."

In the case of *King v. State,* 87 Tenn. 304, 10 S. W. 509, 3 L. R. A. 212, Mr. Chief Justice Turney, in delivering the opinion of the court, said:

"The statute before us permits the judge to have one rule in one case, and the opposite rule in another case, in the same county, and at the same term of court. Under it he may have a discre-

tion to be exercised in one county, and the reverse of that discretion in another county. There is nothing in the act defining, controlling, or limiting that discretion. He is not required to give or have a reason for its exercise the one way or the other; and therefore, when he says the jury in this criminal case may disperse, and the jury in that criminal case shall go, under the rule, the question is settled. Whether he is influenced in the one case by personal consideration for one or more of the jury, or in the other by motives of public policy, can make no difference. He is the sole judge of the question, and his reasons are his own; and there is no authority anywhere to inquire into them.

"The statute is a broad conference of legislative power to abolish, suspend, modify, or enforce a general law. Acting under the authority of this statute, we will necessarily have different rules in different circuits, and in different counties of the same circuit.

"A statute that cannot be reduced to a general rule, to operate in all parts of the state alike, is not a general law. To make a general law, it must be so drawn as to be susceptible of one construction as applicable to the entire state. The discretion, as already said, is for the judge alone. His determination is the law of the particular case in which he has exercised it, and is not · subject to review or revision. The inducement to his action is his individual secret. Suppose, however, it shall be conceded that he may be reviewed, we ask how are we to inaugurate the proceedings for review?

"Nothing has happened at the trial to show an improper exercise of discretion, and therefore no record of the trial can put him in error. Then the question must arise on motion for a new trial, supported by affidavits or other testimony of witnesses with counter testimony, which would make the trial in this court a departure from the trial in the inferior court, the only question here being, Was the discretion properly exercised?—in which it would often be attempted to inquire into and impugn the motive of the judge.

"It is the duty of the Legislature to make the law, and of the courts to enforce. The Legislature cannot say to the courts: 'You may enforce the law or not, in your discretion, or you may suspend it or not in your discretion.'

"The general law remaining, it must be enforced in all cases, unless the judge shall by this statute be permitted to say: 'I suspend it.' When he makes the order on his minutes to that end,

he has performed a legislative and not a judicial act; an act the law has not commanded, an act that was not the law until he saw proper to declare it so; an act that he may do and undo at will. He may disperse the jury today, and put the same jury under rule to-morrow. He is bound to no rule of action, and accountable to no one for his actions. He is a legislative and a judicial compound—something not recognized in our institutions.

"If this had been a general law, authorizing the court to disperse juries in the character of cases mentioned, except upon cause shown for the rule, or even without qualification, the question would have been different."

The distribution of the powers of government into three separate departments, legislative, executive, and judicial, is the basic principle of our constitutional system.

Mr. Madison said:

"The magistrate, in whom the whole executive power resides, cannot of himself make a law, though he can put a negative on every law; nor administer justice in person, though he has the appointment of those who do administer it. The judges can exercise no executive prerogative, though they are shoots from the executive stock; nor any legislative function, though they may be advised with by the legislative councils. The entire Legislature can perform no judicial act, though, by the joint act of two of its branches, the judges may be removed from their offices, and though one of its branches is possessed of the judicial power in the last resort. The entire Legislature, again, can exercise no executive prerogative, though one of its branches constitutes the supreme executive magistracy; and another, on the impeachment of a third, can try and condemn all the subordinate officers in the executive department." (Federal, No. 47, p. 224.)

Mr. Hamilton said:

"It equally proves that, though individual oppression may now and then proceed from the courts of justice, the general liberty of the people can never be endangered from that quarter; I mean so long as the judiciary remains truly distinct from both the Legislature and Executive. For I agree that 'there is no liberty, if the power of judging be not separated from the legislative and executive powers.'" (Federalist, No. 78, p. 356.)

Mr. Webster said:

"It cannot be denied that one great object of written Constitutions is to keep the departments of government as distinct as possible; and for this purpose it imposes restraints designed to have that effect." (Webster's Works, vol. 3, p. 29.)

The founders evidently had in mind Montesquieu's Dissertation on the Spirit of the Laws, wherein he said:

"There is no liberty if the power of judging be not separated from the legislative and executive powers, when the legislative, and executive powers are united in one body or person. There can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws to execute them in a tyrannical manner. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would then be the legislator. Were it joined to the executive, the judge might behave with all the violence of an oppressor."

There are other reasons of propriety for this distribution of power, and why judges of courts created, or authorized, by the organic law should not be burdened with executive or legislative duties. They should, as nearly as possible, be freed from everything not judicial in character. Respect for the position has materially lessened whenever judges have attempted to discharge duties of an executive character. The judge should have no favors to grant, no patronage to dispose of, and no friends to reward. Under such a segregated environment from policies and ways and means, confidence is more assured and reposed in the members of courts, regardless of creed or political affiliation.

The members of the constitutional convention, recognizing the dangers to be feared from concentration of power, and the wisdom of separating the judiciary absolutely from the legislative and executive departments of the government, ordained in section 1, art. 4 (Bunn's Ed. § 50), that:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments, the legislative, executive and judicial; and except as provided in this Constitution, the legislative, executive and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonged to either of the others."

The section of the act in question provides, not only that the Supreme ·Court shall determine when any district court "has such an unusual number of cases awaiting trial by such court that a thorough, prompt and effective administration of justice cannot be secured in said district," but it becomes the duty of said court to recommend to the Governor the appointment of an additional judge for such district for such period as the court may consider necessary to meet the condition, and upon such recommendation the Governor shall appoint an additional judge for such district for the time recommended by the court.

As hereinbefore appears, in the cases of *Commonwealth v. Addams, supra,* and *Smith v. Strother, supra,* the fixing of the salary of the officer by the court before the term begins or the service has been performed is a legislative act, and not a judicial act, and a provision authorizing such act by the judiciary is void. In this case the provision is that the judiciary shall fix the term of office, which is a legislative act, and in no event in the nature of a judicial act. The power to be exercised is neither judicial, nor in aid of any judicial function. *Sawyer v. Dooley,* 21 Nev. 390, 32 Pac. 437; *People ex rel. Deneen, v. Simon,* 176 Ill. 165, 52 N. E. 910, 44 L. R. A. 803, 68 Am. St. Rep. 175. Courts in the discharge of their duties may, under certain conditions, exercise executive or administrative powers. They may be authorized to make contracts for the repair of courtrooms (*White v. Gwin,* 136 Ind. 562, 36 N. E. 237, 22 L. R. A. 402); may appoint commissioners to apportion and assess damages for the opening of a highway or for a right of way (*Salem Turnp. & C. Bridge Co. v. Essex County,* 100 Mass. 282; *Terre Haute v. Evansville & T. H. R. Co.,* 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189; *Tuolumne County v. Stanislaus County,* 6 Cal. 440; *Weir v. St. Paul, etc., R. Co.,* 18 Minn. 155; *Menges v. Albany,* 56 N. Y. 374); may appoint jury commissioners (*State v. Kendle,* 52 Ohio St. 346, 39 N. E. 947; *People v. Onahan,* 170 Ill. 449, 48 N. E. 1003; *Risner v. Com.,* 95 Ky. 539, 26 S. W. 388; *State v. McHatton,* 10 Mont. 370, 25 Pac. 1046; *Veramendi v. Hutchins,* 56 Tex. 414; *State v.*

*Mounts*, 36 W. Va. 179, 14 S. E. 407, 15 L. R. A. 243) ; may determine whether a municipal corporation shall be created, or adjoining territory annexed (*Burlington v. Leebrick*, 43 Iowa, 253; *Wahoo v. Dickinson*, 23 Neb. 426, 36 N. W. 813; *Winfield v. Linn*, 60 Kan. 859, 57 Pac. 549; *Callen v. Junction City*, 43 Kan. 627, 23 Pac. 652, 7 L. R. A. 736; *Ford v. North Des Moines*, 80 Iowa, 626, 45 N. W. 1031; *Blanchard v· Bissell*, 11 Ohio St. 96; *In re Little Meadows*, 35 Pa. 335). But in each and every one of such cases the powers are either judicial in character, or are to be exercised in the discharge of functions pertaining to the judicial department. If the matter is one requiring some judicial determination, it may be left to the court or to the judge, although it is not involved in the determination of an actual case litigated in the ordinary manner. Thus the propriety and necessity of the construction of a bridge over railway tracks may be left to a judge for decision. *State v. New York, N. H. & H. R. Co.*, 71 Conn. 43, 40 Atl. 925. So may the power to pass on a liquor license. *McCrea v. Roberts*, 89 Md. 238, 43 Atl. 39, 44 L. R. A. 405; *Hodges v. Metcalf County*, 116 Ky. 524, 76 S. W. 381; *Whisson v. Furth*, 73 Ark. 366, 84 S. W. 500, 68 L. R. A. 161. Courts cannot fix railroad, telegraph, telephone, water, or other rates, although they may pass on the reasonableness thereof. *Steenerson v. Great Northern R. Co.*, 69 Minn. 353, 72 N. W. 713; *State ex rel. Board of Transportation v. Sioux City, O. & W. R. Co.*, 46 Neb. 682, 65 N· W. 766, 31 L. R. A. 47; *Nebraska Telephone Co. v. State ex rel. Yeiser*, 55 Neb. 627, 76 N. W. 171, 45 L. R. A. 113; *State ex rel. Godard v. Johnson*, 61 Kan. 803, 60 Pac. 1068, 49 L. R. A. 662. Fixing rates in such instances being purely a legislative act, which cannot be delegated to a court, unless provided for in the organic law.

If courts are to fix the terms of office, provided they are necessary, they could also select the officials. Such a union of power would, said Chancellor Kent, in *Dash v. Van Kleeck*, 7 Johns, (N. Y.) 477, 5 Am. Dec. 291, "result in tyranny." See also *Kil*

*bourn v. Thompson,* 103 U. S. 168, 26 L. Ed. 377; 1 Bl. Com. 269.

"That which distinguishes a judicial from a legislative act is that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of future cases falling under its provisions." (Cooley's Const. Lim. [7th Ed.] p. 132.)

In the case of *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 37 Atl. 1080, 38 Atl. 708, 39 L. R. A. 800, the court said:

"So, means of a legislative nature must be used by courts in establishing necessary rules of practice, and by executive officers in making regulations for the conduct of subordinates. Again, appointment to office is in the nature of an executive act. Apart from the purpose of the appointment, it is an exercise of executive power. Our own Constitution, like most Constitutions, provides for certain elective and legislative appointments; but, except in the cases specified, appointment to office is an exercise of executive power, unless used as a means appropriate to the exercise of powers granted to another department, and, when so used, it is not the exercise of executive power, within the meaning of the Constitution. The Constitution of the United States specifies the methods of appointment. Certain officers must be appointed by the President in concurrence with the Senate. All other officers shall be appointed in the same way. 'But, the Congress may, by law, vest the appointment of such inferior officers as they shall think proper in the President alone, in the courts of law, or in the heads of departments,' In commenting on this clause, the United States Supreme Court says that the appointing power designated in respect to inferior officers 'was, no doubt, intended to be exercised by the departments of the government to which the officer to be appointed most appropriately belonged.' *Ex parte Hennen,* 13 Pet. 257, 10 L. Ed. 151. In affirming the validity of the law providing for the appointment of supervisors of elections by circuit courts, the Supreme Court held that there were reasons why such appointments might most appropriately be made by the courts, and relied on this clause as giving a certain discretion to Congress in assigning such appointments to the appropriate department, and referring to the intimation in *Ex parte Hennen,* said: 'In the

present case there is no such incongruity in the duty required as to excuse the courts from its performance, or to render their acts void.' *Ex parte Siebold,* 100 U. S. 371, 398, 25 L. Ed. 717, 727.

"Under our state Constitution, appointments other than those whose mode is prescribed are governed by the division of governmental powers. This question has never come before us directly. It was incidentally considered in some recent cases in connection with the law allowing an appeal from the action of county commissioners in granting licenses. In *Smith's Appeal,* 65 Conn. 135, 31 Atl. 529, we held that the statute required the county commissioners to select, as the recipient of a license, one having 'a personal fitness to perform the *quasi* public duties required by law of a licensee,' i. e., one who is shown to be suited or adapted to the orderly conduct of a business which the law regards as dangerous to public welfare, unless conducted by a carefully selected person duly licensed, whose fitness to the legal requirements must be determined in view of the statutory regulations. In *Hopson's Appeal,* 65 Conn. 140, 31 Atl. 531, we held that the selection or appointment of such a license was a means apparently appropriate both to the exercise of executive and judicial power; that the uniform practice of courts and Legislature in so treating such appointments might be safely accepted when the distinction to be drawn must be subtle and doubtful; and that the action of the superior court upon an appeal from the county commissioners is a judicial proceeding in so far that the judgment of the court may be reviewed by this court when formed on a misconception of the law, as was held in *Smith's Appeal,* 65 Conn., 135, 31 Atl. 529, and in *Beard's Appeal,* 64 Conn. 526, 30 Atl. 775, but that errors claimed in the lawful exercise of discretion in making the selection or appointment could not be reviewed. Such proceeding by appeal is an anomalous one. It confounds process for invoking the exercise of judicial power by way of ordinary judicial proceedings in protecting an individual against the illegal acts of a public officer with the use of the power of appointment as a means incident to the full exercise of judicial power. It is evident that the justification of such judicial appointments must be found in the circumstances peculiar to each case.

"While the necessity and rights of each department to use the means requisite to its unfettered operation is clear, it is equally clear that when one department not only uses the means appropriate to another, but uses them for the purpose of executing the

functions of that other department, it is not in the exercise of its granted power."

We conclude that the clause in section 1 of said act, providing that the court shall recommend to the Governor the appointment of an additional judge "for such period as the court may consider necessary to meet the condition," is, at least as to the fixing of the term by the court, void, being the exercise of legislative power that is, neither as a means appropriate nor necessary to the exercise of the judicial or supervisory powers, granted by the Constitution to that department.

Counsel, in their brief, virtually concede that the act is void wherein it provides for the Supreme Court to fix the term of office of the additional judge, but contend, in that event, that part of the act failing, would leave the term prescribed by the Constitution open for such additional judge. In their brief they assert:

"The question to be decided is, is the limitation of the term of the additional judge essential and inseparable from his appointment and official duties? The answer to this is given in stating the proposition; for the term is provided by the Constitution, and that, being the superior law, governs. Prescribing a term inconsistent with the organic law in no wise affects the right and power of the Legislature to increase the number of district judges and provide for their appointment. To summarize: It is clear from this act that there are two distinct intentions of the Legislature: First, to authorize the appointment of additional district judges where the necessity exists. Second, to limit the term of office to a period less than four years. If one of these intentions is contrary to the Constitution, does it necessarily follow that both intentions must fail; in other words, does the intention to provide for an additional judge depend upon the intention to limit his holding office? We contend that the first intention can legally stand, while the second intention may be declared unconstitutional, and this would leave the judge appointed under this act to hold the constitutional term."

The rule for the test is laid down in Cooley's Constitutional Limitations (7th Ed.) pp. 246, 247, as follows:

"Where, therefore, a part of a statute is unconstitutional

that fact does not authorize the .courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the Legislature would have passed the one without the other."

In the case of *Huntington v. Worthen,* 120 U. S. 97, 102, 7 Sup. Ct. 469, 471, 30 L. Ed. 588, 590, Mr. Justice Field, in delivering the opinion of the court, said:

"It is only when different clauses of an act are so dependent upon each other that it is evident the Legislature would not have enacted one of them without the other—as when the two things provided are necessary parts of one system—that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected."

In the case of *Field v. Clark,* 143 U. S. 649, 651, 12 Sup. Ct. 495, 506, 36 L. Ed. 311, Mr. Justice Harlan, in delivering the opinion of the court, quoted the foregoing excerpt with approval, and further said:

"It cannot be said to be evident that the provision imposing duties on imported articles are so connected with or dependent upon those giving bounties upon the production of sugar in this country that the former would not have been adopted except in connection with the latter. Undoubtedly the object of the act was not only to raise revenue for the support of the government but to so exert the power of laying and collecting taxes and duties as to encourage domestic manufactures and industries of different kinds, upon the success of which, the promoters of the act claimed, materially depended the national prosperity and the national safety. But it cannot be assumed, nor can it be made to appear from the act, that the provisions imposing duties on the imported articles would not have been adopted except in connection with the clause giving bounties on the production of sugar in this country. These different parts of the act, in respect to their operation, have no legal connection whatever with each other. They are entirely separable in their nature, and, in law, are wholly independent of each other. One relates to the imposition of duties upon imported articles;

the other, to the appropriation of money from the treasury for bounties on articles produced in this country. While, in a general sense, both may be said to be parts of a system, neither the words nor the general scope of the act justifies the belief that Congress intended they should operate as a whole, and not separately, for the purpose of accomplishing the objects for which they were respectively designed."

In the case of *Warren et al. v. Mayor, etc., of Charleston,* 2 Gray (Mass.) 99, Mr. Chief Justice Shaw, in delivering the opinion of the court, said:

"But this must be taken with this limitation: That the parts so held respectively constitutional and unconstitutional must be wholly independent of each other. But if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations, for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."

Counsel for petitioners insist that, although that part of the act providing for the period or term to be fixed by the Supreme Court falls, the term of such additional judge then is that prescribed in the Constitution. In such event, every such additional judge becomes a fixture and a permanent officer.

Now, what was the intention of this act? Was it contemplated that the Supreme Court might fix the term to extend with that of the regular elected district judge? And was it further contemplated that the Supreme Court might fix a shorter term? In that event, the shorter term might fall, and the regular term stand. But section 2 of said act says: "And provided further, that no appointment under this act shall extend beyond January 1st, 1911." It is evident that the Legislature did not intend that any further term should be created, and the presumption is that, if the Legislature had intended to create further terms, they would have done so. But, having indicated that they did not intend to create further terms, if we are to take the construction sug-

gested by counsel, we would be writing a meaning into the law that was never contemplated by the Legislature. Under the rule laid down by Mr. Cooley, *supra,* and by Mr. Justice Field in the case of *Huntington v. Worthen, supra,* and by Mr. Justice Harlan in the case of *Field v. Clarke, supra,* the true test is, is it apparent from the act that the Legislature would have enacted the law as it stands after the void part is stricken out? We would not be justified in reaching such a conclusion, when the limitation is written in the proviso, "that no appointment under this act shall extend beyond January 1st, 1911"—a shorter term than the regular term, as provided for in the Constitution.

Hence, we reach the conclusion that the provisions of this act are so connected, and dependent upon each other, that the Legislature would not have enacted one without the other, at least it cannot be presumed that the Legislature would have passed one without the other.

4. Having reached the foregoing conclusion, it is not necessary to determine whether or not that portion of section 2 of said act, which provides that no appointment thereunder shall extend beyond January 1, 1911, is in conflict with that portion of section 9, art. 7 (Bunn's Ed. § 178) of the Constitution, which provides that "the term of office of the district judge shall be four years. * * * The term of the district judges elected at the first election shall expire on the last day next preceding the second Monday in January, 1911, and the judges of the district court thereafter shall be elected at the general election next preceding the commencement of their term of office." But it being a question of great importance to the state, and to the Legislature in passing legislation, we state, in our judgment, the clause "until otherwise provided by law" is merely a limitation upon the sentence in which it appears, and is not a limitation or qualification upon the subsequent part of said section. For if said clause qualifies the entire section, why was the clause "until the Legislature shall otherwise provide" incorporated in the following portion of said section: "The time of convening the district court in each county

in this state, until the Legislature shall otherwise provide, and the duration of the term, shall be fixed by the Supreme Court of the state"? Hence the additional conclusion that the provision for the term of the additional judge, being in conflict with the provision of section 9, article 7, *supra*, is void.

Reaching the inevitable conclusion that that portion of said act providing for the appointment of additional judges falls, as being in conflict with our Constitution, for that reason the petition for the recommendation for the appointment of an additional judge for the Seventh judicial district is dismissed.

All the Justices concur.