Dear Representatives, Ernest J. Istook,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. May the Legislature provide for the appointment ofExecutive Branch officers by someone other than the Governor?
 2. Is it constitutionally permissible, in light of the StateConstitution's Separation of Powers provisions, for theLegislature to reserve unto itself the power to appoint ExecutiveBranch officers?
 I. GOVERNOR'S APPOINTMENT POWER
¶ 1 Article VI, Section 13 of the Oklahoma Constitution provides for the Governor's appointment powers as follows:
 The Governor shall commission all officers not otherwise commissioned by law. All commissions shall run in the name and by the authority of the "State of Oklahoma," be signed by the Governor, sealed with the Great Seal of the State of Oklahoma, and attested by the Secretary of State. When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law.
¶ 2 In Riley v. State, ex. rel. McDaniel, 141 P. 264 (Okla. 1914), the Oklahoma Supreme Court determined the validity of the appointment of the Secretary of the State Senate by the Legislature, and in doing so held that the power to select officers of the State is not an exclusive function of either the executive, legislative or judicial branches. The Court also noted that while the task of appointing officers mainly falls upon the Governor, that arises not out of any inherent power of the Governor, but by virtue of the fact that there are a great many officers "not otherwise commissioned by law." The Court stated:
 Generally the power to select officers of the state is not an exclusive function of either the executive, legislative, or judicial branches. Primarily, the power resides in the people, and they alone are authorized to say by what instrumentality the power may be exercised. Citation omitted
 It is true that under our Constitution and laws, the duty of commissioning public officers mainly devolves upon the Governor, but that situation arises out of the fact that there are a great many "officers not otherwise commissioned by law," who under the Constitution must be commissioned by the Governor,
and not out of any inherent power of appointment possessed by the Governor by virtue of his office.
141 P. 264 at 265. (Emphasis added).
¶ 3 So holding, the Oklahoma Supreme Court recognized that the Legislature could provide for the appointment of state officers by someone other than the Governor, as Article VI, Section 13 itself acknowledges that the law could provide otherwise.
¶ 4 The Oklahoma Supreme Court construed the phrase "unless otherwise provided by law" in a similar manner in Burford v.Board of Commissioners of Lincoln County, 162 P. 780 (Okla. 1917). In that case the court upheld the validity of a statute providing that an officer appointed to fill a vacancy shall hold his office until the end of the term for which the officer whom he succeeded was elected or appointed, and until his successor is elected and qualified. Noting that the term of office provided in the statute was different from that provided for in Article VI, Section 13 of the Oklahoma Constitution, the Court found that there was no irreconcilable conflict between the Constitution and the statute, as the constitutionally established term of office, under the language of the Constitution only controlled "unless otherwise provided by law." So finding the court stated:
 The power to fix the term of an officer appointed to fill a vacancy being vested in the Legislature, and that body having acted and made provision as to the duration of the term, the contention that section 4282, Rev. Laws 1910, is repugnant to Article VI, Section 13, Article VI, of the Constitution must fail.
162 P. 780 at 782.
¶ 5 More recently in Welch v. Key, 365 P.2d 154 (Okla. 1961), the Oklahoma Supreme Count held that the phrase "officers not otherwise commissioned by law" in Article VI, Section 13, empowered the Legislature to determine how members of a boardshall be selected and appointed. So ruling, the Court held that the Legislature was empowered to restrict the Governor's appointment of State Election Board members to a list of names submitted by the State Central Committee of the two political parties casting the highest number of votes in the last general election of state officers.
¶ 6 Based upon the above authority, we conclude that the Legislature may provide for the appointment of Executive Branch officers by appropriate persons or entities other than the Governor. Your second inquiry questions whether the Legislature is an appropriate entity for making executive appointments.
 II. LEGISLATIVE APPOINTMENT OF EXECUTIVE BRANCH OFFICERS
¶ 7 Your second question asks whether, in light of our Constitution's Separation of Powers provisions, the Legislature, in providing for the appointment of Executive Branch officers other than by the Governor, may retain the power to make such appointments itself. Under Article V, Section 36 of the Oklahoma Constitution, the authority of the Legislature extends to all rightful subjects of legislation, and specific grants of authority in the Constitution do not work as restrictions upon the legislative power. Thus the Legislature, in a general sense, may legislate in all areas, except those which are prohibited by the Constitution. The question presented is thus whether the Constitution's Separation of Powers provisions prohibit the Legislature from appointing Executive Branch officers.
 A. Oklahoma's Separation of Powers Provisions
¶ 8 Oklahoma's Separation of Powers Clause is set forth at Article IV, Section 1, as follows:
 The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.
(Emphasis added).
¶ 9 This provision is not the sole provision in the Constitution dealing with Separation of Powers among the three branches of government. Rather, the separate independent nature of the branches of government is interwoven throughout the Constitution. The Constitution at arts. V, VI, and VII, provides for the three separate branches of government, vesting the powers of each branch in the officers of that branch.
¶ 10 Additionally, the officers of one branch, are prohibited from holding office in another branch. Members of the Legislature, at Article V, Section 18, are prohibited from holding; other offices within State government:
 No person shall serve as a member of the Legislature who is, at the time of such service, an officer of the United States or State government, or is receiving compensation as such; nor shall any person be eligible to election to the Legislature, who has been adjudged guilty of a felony.
¶ 11 Likewise, Judges, at Article VII, Section 11(b), are prohibited from holding other state offices or positions of trust or profit.
 No Justices or Judges, except those of Municipal Courts, shall engage in the practice of law nor hold any other office or position of profit under the United States or this State or any municipal corporation or political subdivision of this State, nor shall hold office in any political party. Provided that the Judges of the Court on the Judiciary, the Court of Tax Review and the Court of Bank Review and the Judges of any other such Special Courts may serve in such capacities in addition to their other judicial office. Compensation for service in the National guard or the armed forces of the United States for such periods of time as may be determined by rules of the Supreme Court shall not be deemed "profit."
¶ 12 The separation of the three branches of government in Oklahoma's Constitution forms what William H. Murray, President of our State Constitutional Convention referred to as the government's architectural plan or "blue print":
 Writing a mere provision of a Constitution and understanding all of the component parts are quite different things. . . . When a man desires to construct an edifice of great size and dimensions, he first employs an architect. This architect draws completely the size of the rooms, the partition walls, the windows and doors, the ventilation, the staircase, the closets, and every detail of that building on a "blue print." He has in his mind a complete picture of that edifice. The man who constructs the building does not possess that clear conception, but he follows the "blue print". . . . Just so in drafting a Constitution. Few, however, are "Architects of Constitutions." They believe in certain principles and measures and sections that should go into the Constitution; but there must be a few, or at least one man, who is the "Architect" of that Constitution, who understands the powers of government and how to arrange them, separating the Legislative, Executive, and Judicial, from each other, and causing them to co-ordinate without hitch, but to be independent of each other except where necessity requires an exception; and this conception must be followed in the enactment of all Laws; else, like the edifice, it would tumble and fall as a Government.
Murray, William H. MEMOIRS OF GOVERNOR MURRAY AND TRUE HISTORY OF OKLAHOMA, Meador Publishing Company, Boston Massachusetts, Volume II, Pages 42-43 (1945).[1]
¶ 13 Further commenting, Murray notes how courts, when presented with a Legislative measure providing for the mixture of power between the branches of government, not specifically authorized by the Constitution, should hold the same unconstitutional, Murray states:
 Moreover, the Courts in Construing the Constitution, when-ever there is a breach or "mixture of power" by Legislative Act, not specifically authorized by some clause or section of the Constitution, should rule such measure Unconstitutional; because it does not harmonize with the "blue print," of the Constitution.
Id. at 43.
 B. General Nature of Oklahoma's Separation of Powers Provisions
¶ 14 Shortly after statehood, in In re County Com'rs, 98 P. 557
(Okla. 1908), the Oklahoma Supreme Court considered, among other things, the validity of 1907-08 Oklahoma Session Law (c. 46, p. 453), which provided that upon the recommendation of the Supreme Court "the Governor shall appoint an additional judge for a certain district for the time recommended by the Court." In finding the provision violative of the Separation of Powers Doctrine, the Court noted that in determining if the doctrine is violated, the power being exercised is a key consideration:
 In this case the provision is that the judiciary shall fix the term of office, which is a legislative act, and in no event in the nature of a judicial act. The power to be exercised is neither judicial, nor in aid of any judicial function. (Emphasis added).
98 P. 557 at 561-562.
¶ 15 In reaching this conclusion the Oklahoma Supreme Court embraced the teachings of political philosopher Baron de LaBrede et de Montesquieu on Separation of Powers:
 The founders evidently had in mind Montesquieu's Dissertation on the Spirit of the Laws, wherein he said:" There is no liberty, if the power of judging be not separated from the legislative and executive powers, when the legislative, and the executive powers are united in one body or person. There can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws to execute them in a tyrannical manner."
98 P. 557 at 561. (Emphasis added).
¶ 16 The Court also noted that "the distribution of the powers of government into three separate departments is the basicprinciple of our constitutional system." 98 P. 557 at 561.
¶ 17 It should not go unnoted that this case, In re CountyCom'rs, was decided in 1908, less than one year after statehood. The case shows that from the earliest days of statehood our courts recognized that our Separation of Powers provisions were based on the teachings of Montesquieu, and constituted "the basic principle of our constitutional system."
¶ 18 The prohibition of Oklahoma's Separation of Powers Clause that "neither [branch] shall exercise the powers properly belonging to either of the others," formed the basis for the Oklahoma Supreme Court's opinion in Simpson v. Hill, 263 P. 635
(Okla. 1927). In that case the Court held that the Legislature, under the Constitution, did not have the power to call itself into special session, because such power was vested exclusively in the Governor. Thus the Court found that the Legislature's act of calling itself into session was unconstitutional. In reaching this conclusion, the Court noted that the prohibition in Oklahoma's Separation of Powers Clause was in "strong language" which imposed an inhibition upon the three branches ofgovernment:
 The last clause, "and neither shall exercise the powers properly belonging to either of the others," is an inhibition. It is found in the said Article and is strong language, and used to prevent one of the said branches of state government from undertaking to do what the organic law of the state directs shall or may be done by another.
263 P. 635 at 638. (Emphasis added).
¶ 19 While recognizing that the strict inhibitions of the Oklahoma Separation of Powers Clause are stated in strong constitutional language, the Oklahoma Supreme Court, like the United States Supreme Court, has also recognized that there may be a certain blending of the three powers of government, and that the distinction among the three branches cannot be carried out with "mathematical precision," nor is it possible to divide the branches into "water tight compartments." Bailey v. State Boardof Public Affairs, 153 P.2d 235, 239 (Okla. 1945). In Bailey,
the Oklahoma Supreme Court considered the validity of a statute which authorized the State Board of Public Affairs to transfer functions, inmates, funds and personnel from one state penal or eleemosynary institution to another. The statute was challenged as violating the Separation of Powers Clause because it conferred legislative power upon an executive branch board. In upholding the challenged statute the Court quoted with approval fromWayman v. Southard, 10 Wheat. 1, 43 (U.S. 1825) the following discussion of Chief Justice Marshall:
 "But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself." The rule is one of necessity. The Legislature ordinarily meets but once every two years, and then only for a short period of time. Citation omitted While it is not in session, the government must be carried on, and it must delegate certain powers and discretion to others in carrying on essential functions of government.[2]
153 P.2d 235 at 239.
¶ 20 It is interesting to note that in embracing this analysis, the Oklahoma Supreme Court adopted language similar to that used by Murray who spoke of the branches of government being "independent of each other except where necessity requires an exception."
 C. Legislative Appointment of Executive Officers Violation of Separation of Powers Doctrine
¶ 21 In order to determine whether the Legislature, without violating the Separation of Powers provisions of our Constitution, can reserve unto itself the power to appoint executive officers, it is necessary to determine whether the appointment of executive officers constitutes an executive or legislative function. If it is an executive function, we must then determine whether the Constitution allows for such an exception. Our first inquiry is whether the Constitution, assuming such appointment is an executive function, permits such appointment by providing in Article VI, Section 13, that the Governor shall appoint when a vacancy occurs, "unless otherwise provided by law."
¶ 22 Sound reasons exist for concluding that the "unless otherwise provided by law" language is not a Constitutional variance from the Separation of Powers principle. The fact that the Separation of Powers principle is expressed in strong language in our Constitution, and is the basic principle of our constitutional system militates against such a construction, especially when an alternative construction is available. That alternative construction recognizes that there is a marked difference between the Legislature providing for the manner in which an appointment is made, and the actual making of the appointment itself. In State ex rel. Attorney General v.Kennon, 7 Ohio State 547 (1857), the Ohio Supreme Court recognized such a distinction stating
 Directing by law the manner in which an appointment shall be made, and making an appointment, are the exercises of two different and distinct powers: the one prescribing how an act shall be done, being legislative; and the other doing the act — being administrative.
(Emphasis added).
¶ 23 Similarly, in State ex rel. Jameson v. Denny,
21 N.E. 252, 256, 4 L.R.A. 79 (Ind. 1889), the Indiana Supreme Court held:
 We think it plain that the power to provide by law the manner or mode of making an appointment does not include the power to make the appointment itself.
Also see Legislative Research Com'n. v. Brown,665 S.W. 2d 907, 923 (Ky. 1984) in which the court reached a like conclusion.
¶ 24 Having concluded that the "unless otherwise provided by law" language does not itself confer upon the Legislature the power to make executive appointments, we next determine whether the Separation of Powers principle itself would allow such appointments.
¶ 25 As noted earlier, in Bailey v. State Board of PublicAffairs, 153 P.2d 235 (Okla. 1945), the Oklahoma Supreme Court determined that the policy declared by the Legislature relating to the transfer of functions, inmates, and personnel from one penal institution to another, constituted sufficient guidelines to enable the executive officers to execute the law's policy. So holding, the Court commented upon the distinction between legislative and executive functions:
 "The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.
 153 P.2d 235 at 239 (Emphasis added), quoting AssociatedIndustries v. Industrial Welfare Commission, 185 Okl. 177,90 P.2d 899, which quoted with approval from Cincinnati, etc., Co.v. Clinton County Com'rs, 1 Ohio St. 77, 88 (1852).
¶ 26 In City of Sand Springs v. Dept. of Pub. Wel.,608 P.2d 1139, 1146 (Okla. 1980), the Oklahoma Supreme Court once again had occasion to comment on the distinction between legislative and executive or administrative authority.
 This Court has committed itself to the proposition that the essence of the legislative function is the determination of policy; indeed, the dichotomy between administrative acts and legislative acts hinges upon the declaration of policy, which is a legislative function, and the implementation of that policy, which is traditionally an administrative function.
¶ 27 In that case, the Court considered, among other things, whether the Department of Public Welfare could, without violating the Separation of Powers Clause, formulate policies for the effective administration of the Department's duties. The Court held that Article XXV of the Oklahoma Constitution specifically conferred policy making power upon the Commission. Because the Constitution itself empowered the Commission to make legislative policy decisions, the Court held that the Separation of Powers Clause had not been violated. In reaching this conclusion, the Court specifically noted that the Separation of Powers Clause required separation among the branches of Government "except as provided in this Constitution."
¶ 28 In Federalist Paper No. 47, James Madison discusses the separation of powers doctrine, quoting Montesquieu'sDissertation on the Spirit of the Laws; the same work our State Supreme Court relied on in In re County Commissioners,98 P. 557 (Okla. 1908). Madison and Montesquieu, like our Court, saw the legislature as law maker and the executive as law executor:
 "When the legislative and executive powers are united in the same person or body" says he, "there can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner." [The Federalist, Wesleyan Univ. Press (1961), p. 326.]
¶ 29 Madison went on to discuss the United States Constitution's Separation of Powers Doctrine, in light of Montesquieu's writing, and in so doing commented upon various state constitutional provisions on Separation of Powers, noting their various virtues and vices. Discussing Massachusetts' constitutional provision, Madison found that its declaration "that the legislative department shall never exercise the executive and judicial powers, or either of them: The executive shall never exercise the legislative and judicial powers, or either of them: The judicial shall never exercise the legislative and executive powers, or either of them," constituted a declaration corresponding precisely with the doctrine of Montesquieu. Then, commenting on various specific provisions of the Massachusetts Constitution, Madison found that one provisionviolated the doctrine of Separation of Powers. That provisionpermitted the appointment of particular executive officers by theLegislature. Discussing this vice of the Massachusetts Constitution, Madison stated:
 Lastly, a number of the officers of government are annually appointed by the legislative department. As the appointment to offices, particularly executive offices, is in its nature an executive function, the compilers of the Massachusetts Constitution have in this last point at least, violated the rule established by themselves.
Id. at 328.
¶ 30 Like Madison, Thomas Jefferson recognized the evils attendant to Legislative appointment of executive offices, Jefferson stating
 "Nomination to office is an executive function: to give it to the legislature, as we do, is a violation of the principle of the separation of powers; it swerves members from correctness, by temptation to intrigue for office for themselves, and to a corrupt barter for votes, and destroys responsibility by dividing it among a multitude. By leaving nomination in its proper place, among executive functions, the principle of the distribution of powers is preserved, and responsibility weighs with its heaviest force upon a single head." Jefferson's November 21, 1816, letter to S. Kercheval, Esq., as quoted in Field v. People, 2 Scam. 80, 141 (Ill. 1839).
¶ 31 Discussing similar "evils," the Illinois Supreme court inKing v. Lindberg 345 N.E. 2d 474, 475-76 (Ill. 1976) noted that the passage of a law or its defeat might depend upon the appointment of a particular officer, the Court stating:
 The evil produced was, that the legislature became the great appointing power, giving rise to injurious combinations affecting the purity of legislation. The passage of a law, or its defeat, might be made to depend on the election of a particular individual to a particular office.
¶ 32 Noting the dangers attendant to legislative appointment of executive officers, the Supreme Court of Indiana in Tucker v.State, 35 N.E. 2d 270, 281 (Ind. 1941), held that constitutional provisions granting the executive the power to faithfully execute the laws, carried with them, "as a necessary and essential incident of that power," the power to appoint subordinate officers of government concerned in the administration of the law.
¶ 33 The Tucker court, in discussing additional dangers of legislative appointment of officers of the other branches, here appointment of judicial branch employees noted that such appointment power robbed the other branches of their independence, the court stating:
 If this be so, then, the legislature may select any number of assistants, assign to them whatsoever duties they may see fit, give them access to the records of the court, and surrender to them the right to share with it all labors and all duties. Surely a court thus subject to legislative rule would be a mere dependent, without a right to control its own business and records. But a constitutional court is not subject to any such legislative control. The legislature cannot for any purpose cross the line which separates the departments and secures the independence of the judiciary. It is not the length of the step inside the sphere of the judiciary that summons the courts to assert their constitutional right, and demands of them the performance of their sworn duty, for the slightest encroachment is a wrong to be at once condemned and resisted.
Id. at 283.
¶ 34 Similarly, the Kentucky Supreme Court, in LegislativeResearch Com'n v. Brown, 664 S.W.2d 907, (Ky. 1984) found that legislative appointment of executive officers would enable the legislature to gradually absorb unto itself the patronage control and the greater part of the functioning agencies of the state, the court stating:
 So where the Constitution provides that all officers whose appointment is not otherwise provided for in the Constitution shall be chosen in such manner as may be prescribed by law, it is held that, while this provision authorizes the Legislature to provide by law for the appointment or election of such officers, it does not authorize the Legislature itself to make such appointment or election.
 The Court used the separation of powers doctrine to bolster its view when it said:
 The logical result of the contention, that the General Assembly, under Section 93, could make appointments if adopted and followed, would empower the Legislature to appoint or elect the private secretary to the Governor; the Commissioner, sergeant at arms, tipstaff, and bailiff of the Court of Appeals. . . . .
 . . . [S]uch power on the part of the Legislature, if a full exercise of it should be persisted in, would enable it to gradually absorb to itself the patronage and control of the greater part of the functioning agencies of the state and county governments, and thus endowed it would be little short of a legislative oligarchy.
664 S.W. 2d 907 at 923 (emphasis added), quoting with approval from Sibert v. Garrett, 246 S.W. 455 (Ky. 1922).
¶ 35 The danger that legislative appointment of executive officers could be used by the Legislature to control the executive branch of government, was recently noted by one commentator. Note, "Oklahoma's Legislative Veto: Combat Casualty in Separation of Powers War?" 12 Okla. City Univ. L. Rev., 129, 155-156 (1987):
 [I]n passing laws allowing appointments to executive offices to be made by persons other than the Chief Executive, the legislature presumably could control such an agency itself. There are at least two creative ways to achieve such control. One is by allowing the legislature to name members of an executive board. . . . Another is more direct. . . . Presumably, the legislature could create an agency with members either from the ranks of the legislature itself or appointed by the legislature. . . .
 Whether such an attempt to gain legislative control . . . would stand constitutional scrutiny is purely speculative. While the Oklahoma Supreme Court appears ready to zealously defend the judicial turf in separation of powers battles, it may not be as predictable on battles between the executive and legislative branches.
(Emphasis added).
¶ 36 Legislative appointment of executive officers can easily result in the Legislature exercising control over the Executive Branch. Indeed such control is exactly what Montesquieu, Madison and other founding fathers feared would come about, unless the branches of government were separate and independent.
¶ 37 As Madison noted in Federalist Paper No. 48, the legislative department derives superiority over the other branches due to a variety of circumstances. [The Federalist,
Wesleyan Univ. Press (1961) p. 334.] The Legislative Branch's policy making power, which often extends beyond the legislative sphere, is enhanced by the legislature's access to the pockets of the people. These factors, coupled with the legislature's prevailing influence over the pecuniary rewards of those who fill the other branches, noted Madison, has created a dependency, which gives still-greater facility to the legislature's encroachment into the other branches of government. Id.
Legislative appointment of executive offices would add to this encroachment.
¶ 38 This does not however, mean that the power to appoint is exclusively an executive function, quite the contrary, as the Indiana Supreme Court pointed out in Tucker v. State,35 N.E. 2d 270 (Ind. 1941). The power of the appointment, while intrinsically executive, may be exercised by the court or the legislative body as an incidental power of an independent department of government, when appointing officers within each of those branches. The court stated:
 . . . we do not understand the authorities to assert that the selection of officers is always an executive act. On the contrary, the authorities hold that, while the power is intrinsically executive, it may be exercised by a court or by a legislative body as an incidental power of an independent department of the government. No one would, we confidently assume, be so bold as to assert that the legislature may not appoint officers connected with its duties and proceedings, and there is no more reason for denying the power to the courts than there is of denying it to the Legislature. The truth is that all independent departments have some appointing power as an incident of the principal power, for without it no department can be independent.
35 N.E.2d 270 at 282.
¶ 39 Also see Legislative Research Com'n v. Brown,664 S.W. 2d 907 (Ky. 1984), in which the court found that the authorities are agreed that the courts and the legislature may appoint those public officials who are necessary to the exercise of their own function.
 D. View That Appointment of Executive Officers is an Executive Function is Consistent with Oklahoma Law
¶ 40 While states have adopted various views on the subject,[3] the view that legislative appointment of executive officers violates Separation of Powers principles is consistent with the language of Oklahoma's Constitution, and the analysis and policies used and embraced by the Oklahoma courts. In Riley v. State, ex rel. McDaniel, 141 P. 264 (Okla. 1914), the Oklahoma Supreme Court, had occasion to address the propriety of the Legislature's appointment of a legislative branch officer. In that case, Governor Cruce had called the members of the Legislature into extraordinary session, as it had adjourned sinedie without approving a general appropriations bill. As part of his message calling the special session, the Governor recommended that the Legislature consider the "consolidation and elimination of certain local officials," and "abolishing or eliminating officers and curtailing the number of appointees, assistants, and deputies in local, county, and state governments as in your judgment may be in the interest of greater economy and more efficiency in government."
¶ 41 Responding to the Governor's message the Legislature passed an act making the secretary of the Senate the Secretary of the State Election Board. The Court found that the enactment "had the effect of eliminating the office of Secretary of the State Election Board, as it formerly existed, and in consolidating the two offices." This action, the Court held, "was clearly within the purview of the Governor's message."
¶ 42 In addition to determining that the enactment was within the purview of the Governor's message, the Court also passed upon the propriety, under the Separation of Powers Clause, of the appointment of the Secretary of the Senate by the Legislature. Referring to the Governor's appointment powers under Article VI, Section 13, the Court noted that while it was true that under our Constitution and laws, the duty of commissioning public officers mainly devolves upon the Governor, that situation arises out of the fact that there are a great many officers "not otherwise commissioned by law." The Court also noted that generally the power to select officers is not an exclusive function of either the executive, legislative, or judicial branch.
¶ 43 So holding, the court then went on to find that the Legislature could appoint officers within the legislative
department, the Court stating:
 For example, it is not contended that the power to commission officers conferred upon the Governor by the foregoing section of the Constitution [Article VI, Section 13] empowers him to commission any of the officers or employees of either branch of the Legislature. That is a power inherent in all legislative bodies, and we find unmistakable recognition of the existence of this power in the Legislature of this state in at least two sections of our Constitution. Sections 31 and 49, Article 5, Williams' Constitution.
 The term, "secretary of the state Senate" is sufficiently descriptive of the nature of the office to make it clear that the person holding such office is an officer of the legislative department of the state, and belongs to the class which the legislative department has the power to appoint.
141 P. 264 at 265. (Emphasis added).
¶ 44 More recently, in Tweedy v. Oklahoma Bar Association,624 P.2d 1049 (Okla. 1981), the Oklahoma Supreme Court had occasion to comment upon the distinction between legislative and executive power. In finding that while legislative power included the power to make law, it did not include the power to execute the law, or to appoint those charged with this enforcement, the Court stating:
 Legislative, as distinguished from executive, power is the authority to make law, but not to execute it or to appoint agents charged with the duty of enforcement. The latter is purely an executive function.
624 P.2d 1049 at 1054. (Emphasis added).
¶ 45 As the appointment of executive officers charged with execution and enforcement of state policy is an executive function, performance of that function by the Legislature violates the Separation of Powers provisions of the Oklahoma Constitution. However, not all legislative appointments fall into this category.
 III. EXAMPLES OF LEGISLATIVE APPOINTMENTS THAT DO AND DO NOT VIOLATE THE SEPARATION OF POWERS PROVISIONS OF THE OKLAHOMA CONSTITUTION
Example of Permissible Legislative Appointment.
¶ 46 Whether a particular appointment by the Legislature constitutes a violation of the Separation of Powers provisions of the State Constitution depends, as noted above, on the office involved, the function of the office, and whether the appointment is in aid of a legislative function. As the Oklahoma Supreme Court noted in Riley v. State, ex rel. McDaniel, 141 P. 264,265 (Okla. 1914), the Legislature has the inherent power to appoint all officers and employees of either house of the Legislature. Thus, as the Court held, the Legislature could appoint the Secretary of the State Senate.
¶ 47 The Legislature's power to appoint has been held, however, to extend beyond the power to appoint the immediate officers of each house, and to include the power to appoint officers, whose primary function is in aid of the legislative function.
¶ 48 In Parker v. Riley, 113 P.2d 873 (Cal. 1941), the California Supreme Court held that the Legislature could appoint the Commission on Interstate Cooperation because the Commission performed an essentially legislative function — the ascertainment of pertinent facts as a basis for legislation. The Court thus concluded that the Commission was a "legislative commission" properly appointed by the Legislature. The California Commission, did not enforce the law, but merely provided information and recommendations to the Governor and Legislature. In classifying the performance of this function as being ancillary to the lawmaking function, the California Court stated:
 The statutory plan culminates in recommendations or proposals made by the commission from time to time. Such activity, in so far as it requires classification, may properly be described as the performance of duties which are incidental and ancillary to the ultimate performance of law-making functions by the legislature itself. It is difficult to see how the general doctrine of political theory designed to apply to the basic and fundamental powers of government can be said to prohibit the exercise of such subsidiary and incidental duties.
113 P.2d 873 at 876-77. (Emphasis added).
¶ 49 Further characterizing the Commission's function, the California Court turned to a discussion of the Commission's ascertainment of pertinent facts for the Legislature's use, the Court stated:
 The ascertainment of pertinent facts as the basis for legislation is within the power of the law-making department of government. When a legislative body has a right to do an act, it must be allowed to select the means within reasonable bounds. It is not precluded from delegating incidental powers which it may exercise itself in aid of its primary functions. . . . Familiar methods are by appropriating the results of studies already made by itself or by others, by conducting an inquiry through a committee of its members, or by utilizing an existing commission or board to make and report the results of a research. Courts have approved the creation of legislative agencies such as the commission created by this statute.
113 P.2d 873 at 877-78. (Emphasis added).
¶ 50 The Oklahoma Legislature's appointment of members to the Oklahoma State Pension Commission falls into this category. — The primary function of that Commission, provided for at 74 O.S.941 (1989) et. seq., is to gather information regarding the performance of the various State retirement systems and publish such information on a quarterly and annual basis. The annual report is to include such matters as (1) analysis of the written investment plans developed for each retirement system, (2) qualitative and quantitative analysis of the performance of the custodians employed by each governing body of the retirement systems, (3) recommendations on administrative and legislative changes to improve the performance of the systems, and (4) a summary of the most recent actuarial valuations of each system.74 O.S. 942(A)(2) (1989).
¶ 51 The Commission is required to provide such information to the Governor, the President Pro Tempore of the Senate, the Speaker of the House of Representatives, and the Chairman and Vice-Chairman of the Joint Committee on Fiscal Operations. As such, the function of the Oklahoma State Pension Commission is in aid of legislative functions.
¶ 52 Thus, the Commission may be properly appointed by the Legislature, because the Commission's only duties are in aid of a legislative function. Such, however, is not the case with legislative appointment of members to all pension boards.
Example of Impermissible Legislative Appointment
¶ 53 The Oklahoma Firefighters Pension and Retirement System Board was created at 11 O.S. 49-100.2 (1981). Under the provisions of 11 O.S. 49-100.3 (1989), the President Pro Tempore of the Senate and the Speaker of the House of Representatives are each empowered to appoint a member to the Firefighters Pension and Retirement Board, The function of that Board, is not in aid of a legislative function, but rather is an executive function — management of the retirement system itself. Under the provisions of 11 O.S. 49-100.7 (1989), the Board is responsible for (1) developing the policies and rules for the general administration of the retirement system, (2) installing a complete and adequate system of accounting and records, and (3), among other things, ruling on applications for pensions, disability benefits, refunds, accumulated contributions and similar matters.
¶ 54 Clearly, the Board's function is to execute the law. Thus the Board's role cannot properly be viewed as a role in aid of a legislative function. Accordingly, under the principles discussed above, appointment to the Board by the Legislature, or any of its members, violates the Separation of Powers provisions of the Oklahoma Constitution.
Example of Impermissible Legislative Service on Executive Body
¶ 55 Similarly, neither the Legislature nor members of the Legislature may appoint themselves to serve on bodies whose functions are execu tive, rather than legislative in nature. For example, the appointment of certain legislators to serve on the Legislative Bond Oversight Commission violates the Separation of Powers provisions of the Oklahoma Constitution, as that Commission is an executive, rather than a legislative commission. The Legislative Bond Oversight Commission is composed of six legislators who are chairpersons of various committees of the House of Representatives and the Senate. 62 O.S. 695.4 (1989). Essentially, every bond issue of a State governmental entity must be approved by the Legislative Bond Oversight Commission before the bond can be issued. 62 O.S. 695.9(A) (1989). The Legislative Bond Oversight Commission is statutorily authorized to adopt rules and regulations to implement its powers. 62 O.S.695.8(A)(5) (1989). Additionally, the Legislative Bond Oversight Commission, together with the Executive Bond Oversight Commission jointly hire a "State Bond Advisor," a position within the State Office of Public Affairs. 62 O.S. 695.7(A)(B) (1989). The primary function of the Legislative Bond Oversight Commission is to execute the bond laws of the State and, accordingly, cannot be viewed as a function in aid of a legislative function. Thus, it constitutes a violation of Separation of Powers for members of the Legislature to perform such functions.[4]
 CONCLUSION ¶ 56 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Under the Governor's appointment powers, provided for inArticle VI, Section 13 of the Oklahoma Constitution, theLegislature may provide for the appointment of Executive officersby an appropriate person or entity, other than the Governor.
 2. The Legislature may not, however, without violating theSeparation of Powers provisions of the Oklahoma Constitution,Article IV, Section 1, retain unto itself, the power to appointExecutive officers, who execute the law, because while theLegislature may make law, it may not execute the law nor appointthe agents charged with its execution.
 3. The Legislature may, however, without violating theSeparation of Powers provisions of the Oklahoma Constitution,Article IV, Section 1, retain unto itself, the power to appointmembers to bodies whose primary function is in aid of alegislative function, such as the Oklahoma State PensionCommission, whose primary function, under 74 O.S. 941 (1989)et seq. is to gather information and analyze the performance ofthe various state pension plans, then make this information,together with recommendations, available to the Legislature andothers.
 4. Members of the Legislature may not, without violating theSeparation of Powers provisions of the Oklahoma Constitution,Article IV, Section 1, serve as members of an Executive body,such as the Legislative Bond Oversight Commission, under 62O.S. 695.4 (1989) et seq., whose primary function is to approvebonds issued by state governmental entities.
 5. Whether any particular legislative appointment constitutesa violation of the Separation of Powers provisions of theOklahoma Constitution, Article IV, Section 1, depends upon theoffice involved, the function of the office, and whether thefunction is in aid of a legislative function.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER ASSISTANT ATTORNEY GENERAL
[1] Like Robert L. Williams' Annotated Constitution ofOklahoma, (Guthrie, Oklahoma 1912 and 1941), Murray's comments on the State Constitution, though not published contemporaneously with the Constitution's adoption, may still be of some aid in understanding the Constitution. See Trustees' Executors' Securities Ins. Corp. v. Hooton, 157 P. 293, 297 (Okla. 1915), in which the Oklahoma Supreme Court relied upon Williams' commentary in interpreting the Constitution.
[2] While Oklahoma's Legislature now meets every year, its regular session is limited by newly adopted at. V, § 26, of the Oklahoma Constitution, that section limiting the session to 90 days between the first Monday in February and the last Friday of May.
[3] E.g., Lockwood v. Jordan, 231 P.2d 428 (Ariz. 1951) (holding that the Legislature could appoint a "post auditor," relying on prior Arizona case law which reasoned that the framers of the state Constitution and the people who adopted it treated and considered the right to select officers as political question, and surrendered that right to the different departments of state only insofar as inherent and necessary, and that where the people have not provided the manner of filling offices newly created, or vacancies in office, they have left that political choice to the Legislature, as their representative), andCaldwell v. Bateman, 312 S.E. 2d 320, 325 (Ga. 1984) (The appointment of a member of the State Campaign and Finance Disclosure Commission by the Speaker of the House was found not to violate the State's Separation of Powers Clause, as mere appointment did not constitute "simultaneously discharging the duties and functions of more than one branch.")
[4] This opinion does not address the applicability, if any, of other constitutional prohibitions, such as the dual office holding prohibition.